424 So.2d 32 (1982)
Elizabeth H. WOLFE, Appellant,
v.
Paul C. WOLFE, Appellee.
No. 81-466.
District Court of Appeal of Florida, Fourth District.
November 24, 1982.
Rehearing Denied January 17, 1983.
*33 Richard G. Lubin of Lubin & Hamill, P.A., West Palm Beach, for appellant.
Larry Klein, Jane Kreusler-Walsh and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
The parties' final judgment of dissolution, entered on March 13, 1975, incorporates an agreement of the parties which contains various numbered paragraphs. Pursuant to paragraph 2f, appellee was required to pay appellant $200 monthly for the support of each of the couple's three children, all of whom lived with appellant when the agreement was made. In addition, paragraph 10b provided for payments by appellee to appellant in the amount of $600 per month for a period of five years.
*34 Prior to the expiration of the five-year period, appellant filed a petition for modification of child support and redetermination of rehabilitative alimony. The trial court granted the request for additional child support, increasing the sum to $100.00 per week per child until the minors (there are now only two) reach the age of majority, or become married or self-supporting. The court, however, denied appellant's request for modification of alimony, finding that the provision in 10b was part of a non-modifiable property settlement agreement not intended as alimony. Appellant contends this was error and we agree.
The relevant sections of the agreement, paragraphs 10 and 16, read as follows:
10. Payments to the Wife.

a. The Husband shall pay the Wife $500.00 in cash upon the execution of this agreement.
b. The Husband shall pay the Wife the sum of $600.00 each month for a period of five (5) years. Such payments to cease upon death or remarriage of the wife.
c. The Husband agrees to pay to the Wife the amount of $8,000.00 within a period of two (2) years from the date of this agreement at a rate of interest of 8% on the unpaid balance until paid with no penalty or addition of interest if paid in advance.
16. Release. Only those payments to the Wife set out in paragraph 10 and payments for the benefit of the children shall be a charge on the Husband's estate, otherwise both parties hereby fully release the other from claims, except as agreed herein, of any nature against the other or the other's heirs, estate, successors or assigns.
Whether these paragraphs refer to alimony or a final property settlement agreement is at issue and the distinction between the two concepts is determinative.
Pursuant to section 61.14(1), Florida Statutes (1973), payments that are considered in the nature of alimony are modifiable. In contrast, payments that are regarded as consideration for a final resolution of property disputes cannot be modified unless by the parties' mutual consent. Mills v. Mills, 339 So.2d 681 (Fla. 1st DCA 1976). To determine the nature of an agreement relating to payments, we look to the intent of the parties "by examining the plain language of the agreement, its surrounding circumstances, and the parties' apparent purpose." Woodworth v. Woodworth, 385 So.2d 1024, 1026 (Fla. 4th DCA), pet. for rev. denied, 392 So.2d 1381 (Fla. 1980).
We recognize that paragraph 10b does not mention "alimony";[1] however, the use of this term alone is not conclusive evidence of the parties' intent, but merely an indicium of it. 385 So.2d at 1026. More significant are the facts that the payments were to terminate upon appellant's death or remarriage [see id., citing Evans v. Evans, 212 So.2d 107 (Fla. 4th DCA 1968)], and that both parties consistently treated the payments as alimony on their individual federal income tax returns. The deduction by appellee of the payments was permissible only if the payments were alimony and not part of a property settlement agreement. Hyotlaine v. Hyotlaine, 356 So.2d 1319, 1321 (Fla. 4th DCA 1978). The charging of such payments to appellee's estate in paragraph 16 does not change our conclusion because parties may agree that alimony *35 does not terminate upon the death of the obligor. O'Malley v. Pan American Bank, 384 So.2d 1258 (Fla. 1980).
Having concluded that the payment provision is modifiable as rehabilitative alimony, we hold that the trial court should have extended the payments and considered whether any increase should have been awarded. Rehabilitative alimony can be modified or extended if the movant can "show that `notwithstanding reasonable and diligent efforts on petitioner's part, substantial rehabilitation has not indeed occurred,' Lee v. Lee, supra 309 So.2d 26 at 27 [(Fla. 2d DCA 1975)]... ." Reid v. Reid, 396 So.2d 818, 820 (Fla. 4th DCA), pet. for rev. denied, 402 So.2d 612 (Fla. 1981). If the party seeking an extension or modification of alimony cannot "go it alone," if he or she is unable to "be in a position reasonably to continue to maintain the lifestyle to which the parties had become accustomed during marriage," the petition for modification should be granted. 309 So.2d at 28. See also Veach v. Veach, 407 So.2d 308 (Fla. 4th DCA 1981).
Turning to the present case, we make the following observations: Since the dissolution, appellant, who has a degenerative disc problem which prevents her from undertaking heavy physical labor, has obtained a Masters of Science degree in Urban and Regional Planning and a real estate license. Immediately after the dissolution she moved to Tallahassee to work with the Division of State Planning at a job paying $10,000 a year. Upon her arrival, she learned the job had been terminated. She eventually got a job with the Florida Association of Community Colleges, where she worked for seventeen months, earning $11,500 a year. After her job was eliminated, she received unemployment compensation for seven months. After obtaining her real estate license in April of 1978, she grossed $3,500 from then until December selling property. In 1979 she earned approximately $12,000 in real estate. Although 1979 was a fairly good year, she claims she is unable to support herself with real estate sales because of the depressed market. After part-time jobs, she started working for the Bureau of Disaster Preparedness in her chosen field in November of 1980, earning $8.21 an hour. The position was funded until September 30, 1981, at which time the grant for this program was to terminate. She now wants to go to law school.
Appellant has made diligent efforts to secure a job both in and out of her chosen field. Through no fault of her own, she is not able to reasonably maintain the lifestyle to which she was accustomed in 1975. As her unrebutted testimony shows, inflation has had an adverse effect on her cost of living. Under Powell v. Powell, 386 So.2d 1214 (Fla. 3d DCA 1980), this specific demonstration of a resulting increase in appellant's financial needs due to the ravages of inflation is enough of a change in circumstance to warrant modification.
Although a heavier burden rests upon a party seeking modification of alimony that is based upon an agreement than otherwise would be required, Schottenstein v. Schottenstein, 384 So.2d 933 (Fla. 3d DCA), pet. for rev. denied, 392 So.2d 1378 (Fla. 1980), appellant's petition for a redetermination of rehabilitative alimony should have been granted, giving her at least more time, and perhaps more money, to become rehabilitated. On remand the trial court should determine the duration of the extension and the amounts, if any, of increase.
The trial court granted appellant's request for additional child support, increasing the amount to $100.00 per week per child until the two minors (the third child is no longer subject to the payment schedule under the agreement) reach majority or become self-supporting. Appellant contends that this amount is insufficient in light of the evidence presented concerning the increased needs of her children, now adolescents, and inflation. Citing to Petersen v. Petersen, 392 So.2d 298 (Fla. 4th DCA 1980), she claims error was committed, especially in light of the fact that the effect of the trial court's order is to award appellant an average of only $133.00 per month per child additional child support over and above what appellee was voluntarily paying *36 at the time of the final hearing. (Appellee had agreed to pay $300 per month per child prior to the filing of appellant's petition.)
We agree with appellant that she established increased needs of her children, the adverse impact of inflation, and appellee's increased income  three criteria identified in Petersen which justify a finding of a change in circumstances sufficient to warrant an increase in child support. But appellant, in our opinion, has failed to demonstrate that the trial judge abused his discretion in not increasing the child support beyond his award of approximately $433.00 per month per child. Accordingly, the trial court's order is affirmed in part, reversed in part, and remanded.
HERSEY, J., and OWEN, WILLIAM C., Jr., Associate Judge, concur.
NOTES
[1] Perhaps we should refer to these kinds of accords as Miles Standish agreements as the problems always seem to arise, not because of what is said, but because of what is not said. We judges and lawyers have more tools at our disposal than the other professions; namely, all of the words in the English language. We must use those tools with the same care as the physician uses his scalpel. Accordingly, in such agreements between spouses, if the parties desire that the wife be paid alimony without the payments being modifiable, they should express it. Such provision is plainly enforceable. Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA), pet. for rev. denied, 392 So.2d 1381 (Fla. 1980); Muss v. Muss, 390 So.2d 415 (Fla. 3d DCA 1980); Kilpatrick v. McLouth, 392 So.2d 985 (Fla. 5th DCA 1981). Similarly, if payments are intended to be a property right and non-modifiable, that, too, should be said as such provision is equally enforceable.