478 So.2d 356 (1985)
Joan BOYD, Appellant,
v.
Russell C. BOYD, Appellee.
No. 85-288.
District Court of Appeal of Florida, Third District.
September 17, 1985.
Rehearing Denied November 25, 1985.
*357 Frumkes & Greene and Cynthia Greene, Miami, for appellant.
Horton, Perse & Ginsberg and Mallory Horton, Miami, for appellee.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
In 1975, during the course of their dissolution proceeding, the Boyds entered into a "Stipulation Re: Property Rights, Custody, Etc.," later incorporated into a court order, which provided in part:
That commencing January 4, 1975, in accordance with the parties' Oral Agreement, Husband will pay to Wife the monthly sum of $2000 for 121 consecutive months, as Lump Sum Alimony, payable in advance each month, and said payments shall continue through the payment due January 4, 1985, providing Wife has not remarried or died in the iterim. [sic] Alimony payments will automatically cease, without further action by either party, upon the death or the remarriage of Wife.
In July, 1984, the now ex-wife, alleging material changes in circumstances since 1975 in both her needs and Boyd's ability to pay, filed a petition for modification under section 61.14, Florida Statutes (1983), seeking an increase in the amount and an extension of the period for the payments. On the ex-husband's motion, the trial court dismissed the petition on the ground that, as a matter of law, the payment requirement was not subject to modification. Ms. Boyd appeals and we reverse.
It is established law that in the absence of a contrary agreement[1] periodic payments to be made by one ex-spouse to the other are in fact modifiable pursuant to the express terms of section 61.14 unless they are required either (a) in discharge of a provision for "lump sum alimony," Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980); Storer v. Storer, 353 So.2d 152 (Fla. 3d DCA 1977), cert. denied, 360 So.2d 1250 (Fla. 1978); Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976); or (b) pursuant to a "property settlement agreement," Salomon v. Salomon, 196 So.2d 111 (Fla. 1967); or both. The provision in question here qualifies under neither of these exceptions.
(a) Although the clause speaks of "Lump Sum Alimony," its legal effect is determined not by what it is called, but by what it does. Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Karch v. Karch, 445 So.2d 1077 (Fla. 3d DCA 1984); Zuccarello v. Zuccarello, 429 So.2d 68 (Fla. 3d DCA 1983). By definition, "lump sum alimony" is a fixed and certain amount, the right to which is vested in the recipient and which is not therefore subject to increase, reduction, or termination in the event of any contingency, specifically including those of death or remarriage. Storer; Cann; Seale v. Seale, 350 So.2d 96 (Fla. 1st DCA 1977), cert. denied, 358 So.2d 134 (Fla. 1978). Accordingly, and by token of the same definition, the fact that the payments upon which the Boyds agreed would have ceased if the wife either died or remarried necessarily means that the provision cannot be one of "lump sum alimony." Newsome v. Newsome, 456 So.2d 520 (Fla. 1st DCA 1984); Johnson v. Johnson, 403 So.2d 1388 (Fla. 2d DCA 1981); Wolfe v. Wolfe, 424 So.2d 32 (Fla. 4th DCA 1982).
(b) Considering the agreement as a whole, it is clear that the payments were not limited as a bargained for condition of a mutual exchange of property rights or obligations between the parties as in, for example, Salomon, Karch, Shaw v. Shaw, 448 So.2d 631 (Fla. 4th DCA 1984), and *358 Pruitt v. Pruitt, 370 So.2d 813 (Fla. 3d DCA 1979). Rather, the provision is simply one which involves a discharge, on an agreed basis, of the husband's obligation for his wife's support. Hence, it cannot be regarded as an aspect of a "true property settlement" which is non-modifiable on that ground. Pujals v. Pujals, 414 So.2d 228 (Fla. 3d DCA 1982); Wolfe; Brisco v. Brisco, 355 So.2d 506 (Fla. 2d DCA 1978); English v. Galbreath, 462 So.2d 876 (Fla. 2d DCA 1985).
The trial judge based his contrary decision upon language in Canakaris,[2] which, it is urged in the appellee's brief, establishes that the parties may "agree upon a determination of lump sum alimony upon the condition of death or remarriage, without destroying the non-modifiable effects of lump sum alimony." We reject this contention. The passage of Canakaris in question states:
Although the award of lump sum alimony is not dependent upon a finding of a prior vested right, there does arise upon the entry of a final judgment of a lump sum award a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification. It may consist of real or personal property, or may be a monetary award payable in installments. Jurisdiction may be expressly retained, however, to terminate lump sum alimony installment payments upon a spouse's remarriage or death when the parties agree to such a provision in a property settlement agreement. [emphasis supplied.]
382 So.2d at 1201. In our view, the emphasized statement does not contain anything contrary to the established principles we have outlined, much less create a theretofore unknown hybrid kind of vested but nonetheless terminable "modifiable lump sum alimony"  an expression which is itself a classic example of a legal oxymoron. It says only that the parties may provide for the termination of what would otherwise be a lump sum obligation "when [they do so] in a property settlement agreement." [emphasis supplied]. As has been seen, however, the terms of a "property settlement agreement" have always themselves been non-modifiable on that basis alone. Since, however, as we have already determined, such an agreement does not exist in this case, it is apparent that the portion of Canakaris upon which the appellee relies does not apply.
For this reason, the order under review is reversed and the cause remanded for determination of the merits of the petition for modification.
Reversed.
NOTES
[1] The appellee does not contend that the parties expressly contracted for the non-modifiability of the support provision. See Bassett v. Bassett, 464 So.2d 1203 (Fla. 3d DCA 1984), and cases cited.
[2] The order below states:

The Supreme Court of Florida meant what it said in the case of Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla. 1980), wherein the court provided that lump sum alimony installment payments may be terminated upon a spouses' remarriage or death, when the parties agree to such a provision in a property settlement agreement.